UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
RONALD J. PAUST,

                        Plaintiff,                      15 CV 7072 (ADS)

    - against -

LONG ISLAND RAIL ROAD COMPANY,

                        Defendant.
-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION IN LIMINE

      Defendant Long Island Rail Road Company ("LIRR"), by its attorney, Mark D. Hoffer, Esq., Vice President & General Counsel of the Long Island Rail Road Company, respectfully submits this memorandum of law in support of its motion *in limine* with respect to certain evidentiary issues that are anticipated to arise at trial.

1

# Table of Contents

Statement of Facts .................................................................................................................. 3
Preliminary Statement ............................................................................................................ 7
    POINT I
    9PLAINTIFF SHOULD BE PRECLUDED FROM ARGUING THAT LIRR
    VIOLATED THE SAA AND/OR LIA ............................................................................ 9
    POINT II
    PLAINTIFF SHOULD BE PRECLUDED FROM ARGUING THAT THE TRAIN'S
    BRAKING SYSTEM WAS DEFECTIVE OR MALFUNCTIONED. .............................. 12
    POINT III
    PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF A
    SAFER ALTERNATIVE OR ARGUING THAT THE TRAIN SHOULD HAVE BEEN
    EQUIPPED WITH A DOOR CHECK SYSTEM. ............................................................ 14
    POINT IV
    LIRR SHOULD BE PERMITTED TO INTRODUCE LIRR CORPORATE SAFETY
    RULES 200.1(4) and 2100.1238 INTO EVIDENCE ....................................................... 17
Conclusion .............................................................................................................................. 18

## Statement of Facts

Plaintiff is employed by the LIRR as a conductor. Declaration of Andrew Muccigrosso ("Mucc. Dec."), Ex. B, Deposition of Plaintiff ("P. Dep."), p. 7. On April 23, 2015, Plaintiff was working as a conductor on train #2711, heading west from Bridgehampton Station. It was part of his duties on the date of the accident to open and close the rail switches so that train #2711 could move into the siding, a short stretch of track used to enable trains on the same line to pass each other, out of the way. This would allow for the eastbound train to pass on the main track before #2711 proceeded west. P. Dep., p. 22. Prior to this accident, Plaintiff climbed down from the same locomotive to open the eastern switch for #2711 to move into the siding without incident and remained there to close the eastern switch before re-boarding the eastern-most cab. P. Dep. pp. 23-24. He did not perceive any problems with the cab door at that time. Plaintiff was asked the following question and gave the following answer about the door involved in the accident at his deposition:

> Q: When you did align that east end switch and entered the cab, did you notice any operational or take notice of any operational difficulties with the door?
> A: No.
> Q: Did you take notice of any issues of any nature that made you think that it might be unsafe to enter the cab?
> A: No.

P. Dep., p. 26.

After the eastbound train passed, the brakeman, another member of the crew, opened the western switch to allow train #2711 to move back onto the main track. P. Dep., p. 24. After moving back to the main track, the train stopped to allow Plaintiff to disembark again and close the western switch. P. Dep., p. 27. The accident occurred at around 11:20 pm, during this second disembarking.

3

Plaintiff provided a statement about the accident to LIRR transportation Manager Christopher Beccari a few hours after the injury. (Since Plaintiff was unable to write at that time, he told Mr. Beccari what happened, which Beccari memorialized in writing, then read the statement back to Plaintiff for accuracy.) Plaintiff told Mr. Beccari, "While he was standing on the rungs of the ladder, he used his left hand to pull the door shut. As the door shut, Mr. Paust inadvertently had his right hand in the door jamb and the door closed on his thumb." Accident Report, Mucc. Decl. Ex. C at p.9. The MTA Police Department responding officer's report also lacks any mention of train movement, but instead reflects "On April 24, 2015, at approximately 101 hours central advised of a LIRR employee who hurt his right hand on train door. Upon arrival to Babylon station, met with aided now known as (Paust, Ronald) who states that while going into the engine car he shut the door on his right hand causing pain and swelling." MTA Police Report, Mucc. Decl. Ex. D at p.2. When reporting this accident to LIRR medical personnel later in the day on April 24, 2015, medical records reflect, "Patient states, 'I was climbing off the engine. I went to close the door... I guess my thumb was in the door jam and it got smashed', right thumb." Mucc. Decl., Ex. E [ellipsis in original].

For the first time at his deposition, Plaintiff offered that the train had moved after he began his descent from the cab, which caused him to lose his right-hand grip on the grab iron and slam the door on his right hand. Plaintiff described the accident as follows at his deposition:

> Q: Tell me how the accident happened.
> A: Okay. I stopped the engineer at the west switch from the siding. Once he stopped, I got up from the cab – from the engineer's seat, walked over to the door. I placed my right hand on the right grab iron and then positioned myself and got my left hand on the left grab iron and proceeded down the steps. When I got to the third step, I reached in to grab the door.
>
> Mr. Flynn: With what?
> The Witness: With my left hand.

4

> A: (Continuing) And as I was going to, going to pull the door towards me to close it, the – the – I felt the engine just roll a little bit and then I was – I got thrown this way a little bit (indicating) and I lost my grip with my right hand and I – it – I went back and I – I went to grab something again, I thought it was the grab iron, and – and I was closing the door and that's when my – my thumb got crushed.

P. Dep., p. 27. Paust went on to clarify that it was his right thumb that got caught in the door jamb as he was pulling the door closed with his left hand. P. Dep., p. 28. He speculated that what may have caused the train to move was something related to the brake system called "roll back", but that he did not know what it was, stating, "It's something to do with the brakes." P. Dep., p. 33. He admitted that he did not speak to the engineer about the so-called "roll-back". Beyond that, he was asked:

> Q: Aside from the movement that you've described, and you indicated there's something known to you as a rollback, was there any other condition of the train itself that you believe caused or contributed to the happening of your accident?
> A: No.

P. Dep., p. 35.

Plaintiff filed the Complaint on December 14, 2015, alleging a FELA claim against the LIRR, as well violations of the SAA and LIA. Mucc. Dec., Ex. A, Complaint ("Cmpl."). In his Complaint, plaintiff alleged that LIRR was negligent in "causing, permitting and allowing an unsafe work place, unsafe equipment, in causing, permitting and allowing the locomotive, and its parts and appurtenances, including but not limited to its doors, side ladders and grab irons, to be, become, and remain improperly inspected, maintained, repaired, unsafe, perilous, and hazardous and in otherwise being caseless and negligent . . . ." Cmpl., ¶ 23.

On or about May 16, 2016, Plaintiff served responses to a request for interrogatories and demand for production of evidence. Mucc. Dec., Ex. B, Plaintiff's Response to Interrogatories and Combined Demands (w/o exhibits), ("Ex. F."). Interrogatory #5 asked: "Without reference to your

complaint, set forth in detail each and every act, omission, default or basis of liability of the defendant upon which you predicate your claim." Ex. F, Interrogatory #5. In response, Plaintiff alleges that the defendant was negligent in, *inter alia*, "Failing to provide plaintiff with a safe place to walk at work", violating FELA, the Safety Appliances Act and the Locomotive Inspection Act, using on its line a locomotive with an improper, inadequate, insufficient, unsafe, work and defective locomotive exterior cab door, using a locomotive with a cab door that had no "door check, or door check system" and other allegations related to the lack of a door check on the cab door, as well as,

> Causing, permitting and allowing and using on its line a locomotive and train with an improper, inadequate, insufficient, unsafe, worn incompatible, and <u>defective air brakes</u>, air brakes system, components, computer, computer program, assemblies, parts, and appurtenances, for use for their designated purpose, <u>such that the air brakes malfunctioned</u> and failed to operate properly, adequately, and sufficiently, exposing plaintiff to risk.

Ex. F, pp. 6-8 [emphasis added]. Later, in summarizing his theory of liability in the Joint Pretrial Order, Plaintiff specified, "On April 23, 2015, plaintiff, a LIRR conductor, as part of his job duties, was, while climbing out of a Locomotive Engine, closing the side door, when the locomotive "rolled-back" causing the engine door to slam shut on plaintiff's right thumb." Mucc. Dec., Ex. G; Joint Pretrial Order (JPTO), §3.2. Based on these responses, Plaintiff's theories of liability and negligence apparently center around (1) a defective or malfunctioning brake system on the locomotive and train and (2) the lack of a "door check" to prevent the cab door from slamming or snapping shut.

In the Joint Pretrial Order, Plaintiff also asserts his objection to LIRR's intended admission of two of its Corporate Safety Rules. LIRR intends to introduce at trial copies of Corporate Safety Rules 200.1(4) and 2100.1238. Rule 200.1(4), provides, "report all safety concerns, including potentially hazardous conditions, to supervision." LIRR Rule 2100.1238, provides:

6

> When opening or closing windows or doors, employees must use every precaution necessary to avoid personal injury. Keeping fingers and other body parts clear of door and window jambs, latches, window channels, door tracks, hinges and other pinch points. If abnormal resistance or a defect is noted while using doors or windows, employees must not use force to operate. Defects must be reported to Maintenance of Equipment Central Control.

LIRR Corporate Safety Rule 2100.1238. In the JPTO, plaintiff objects to the admission of either rule on the basis that they are "irrelevant and immaterial." JPTO at §10 D & E.

Plaintiff has identified one witness with respect to liability, that being Plaintiff himself. JPTO at §7.1.1.

## Preliminary Statement

First, LIRR seeks an Order barring Plaintiff from arguing that the locomotive in question was defective in any way, thereby barring his Locomotive Inspection Act ("LIA") and Safety Appliance Act ("SAA") claims. Plaintiff has asserted that the train was equipped with defective brakes and was equipped with a door checks. Briefly stated, there is no competent evidence of a defect in the locomotive involved in this case. Plaintiff himself merely testified at his deposition that the train he was disembarking moved "a little bit", causing his injury and guessed that there was "something to do with the brakes" that caused the train to move. Even were the Court to accept his testimony that the train moved, by his own admission, Plaintiff has no basis of knowledge as to what caused its movement. Such testimony, even if accepted as true, does not amount to evidence of a defect sufficient to satisfy the LIA or SAA, which requires a defect in specified parts of the locomotive. To the extent the plaintiff seeks to offer additional testimony of such a defect, he is not qualified to do so by his own admissions. LIRR's failure to install a door check, which is not required under the law similarly fails to satisfy either statute and does not amount to negligence.

7

Second, LIRR seeks to admit two of its Safety Rules. Both are relevant to Plaintiff's claim that LIRR failed to provide a safe workplace as discussed below.

Background

Plaintiff, an employee of the LIRR, brings this action pursuant to the Federal Employers Liability Act ("FELA"), 49 U.S.C. § 51, Safety Appliances Act ("SAA"), and Locomotive Inspection Act ("LIA"), 49 U.S.C. 20701 and rules and regulations promulgated thereunder, for injuries allegedly sustained on April 23, 2015.

Plaintiff alleges that he was injured while climbing down the ladder on the side of the locomotive cab. As he was closing the cab door on the way down the ladder, he slammed or snapped it shut on his right thumb, which was then in the door jamb, causing the injury. Plaintiff was out of work for about 6 months after his injury and has since returned to full duty.

Discovery has been completed and jury selection is scheduled for June 19, 2017. In anticipation of certain evidentiary issues that will arise at trial, Defendant seeks an order: (1) prohibiting plaintiff from arguing that LIRR can be found strictly liable for violations under the either the SAA or the LIA; (2) prohibiting plaintiff from introducing evidence or arguing that defendant was negligent or otherwise breached a duty by causing, permitting and allowing and using on its line a locomotive and train with an improper, inadequate, insufficient, unsafe, worn incompatible, and defective air brakes, air brakes system, components, computer, computer program, assemblies, parts, and appurtenances, for use for their designated purpose, such that the air brakes malfunctioned; (3) prohibiting plaintiff from introducing evidence or arguing that defendant was negligent or otherwise breached a duty by causing, permitting and allowing and using on its line a locomotive with a cab door that had no "door check, or door check system", and (4) permitting Defendant LIRR to introduce LIRR Corporate Safety Rules 200.1(4) and 2100.1238

into evidence.

## POINT I
## PLAINTIFF SHOULD BE PRECLUDED FROM ARGUING THAT LIRR VIOLATED THE SAA AND/OR LIA

### A. There is No Evidence of an SAA Violation.

The Safety Appliance Act provides, in pertinent part, as follows:

§ 20302.   General requirements

(a) General. Except as provided in subsection (c) of this section and section 20303 of this title [49 USCS § 20303], a railroad carrier may use or allow to be used on any of its railroad lines--
   (1) a vehicle only if it is equipped with--
     (A) couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the vehicles;
     (B) secure sill steps and efficient hand brakes; and
     (C) secure ladders and running boards when required by the Secretary of Transportation, and, if ladders are required, secure handholds or grab irons on its roof at the top of each ladder;
   (2) except as otherwise ordered by the Secretary, a vehicle only if it is equipped with secure grab irons or handholds on its ends and sides for greater security to individuals in coupling and uncoupling vehicles;
   (3) a vehicle only if it complies with the standard height of drawbars required by regulations prescribed by the Secretary;
   (4) a locomotive only if it is equipped with a power-driving wheel brake and appliances for operating the train-brake system; and
   (5) a train only if--
     (A) enough of the vehicles in the train are equipped with power or train brakes so that the engineer on the locomotive hauling the train can control the train's speed without the necessity of brake operators using the common hand brakes for that purpose; and
     (B) at least 50 percent of the vehicles in the train are equipped with power or train brakes and the engineer is using the power or train brakes on those vehicles and on all other vehicles equipped with them that are associated with those vehicles in the train.

"Safety Appliance Act", 49 U.S.C. § 20302(a). Railroads have an "absolute duty to comply with the [SAA]." *Myers v. Reading Co.*, 331 U.S. 477, 485, 67 S. Ct. 1334, 91 L. Ed. 1615 (1947).

"The cause of action created by the [FELA] embraces claims of an employee based on violations of the Safety Appliance Act. In such actions, the injured employee is required to prove only the statutory violation and thus is relieved of the burden of proving negligence." *Crane v. Cedar Rapids & I. C. R. Co.*, 395 U.S. 164, 166 (1969)[citations omitted]. The SAA "imposes an absolute duty on railroads and whose violation therefore constitutes negligence per se for purposes of FELA's third element." *Marshall v. Grand Trunk Western R.R. Co.*, 850 F. Supp. 2d 686, 697 (W.D. Mich. 2011).

In the Complaint, Plaintiff alleges a violation of the SAA without specifying which section of the statute was violated. In reporting the accident in this case, Plaintiff reported no missing or defective equipment required under the SAA on the locomotive cab on which he was injured. Discovery yielded no evidence of any defect or failure to comply with the SAA. As a result, Plaintiff should now be precluded from arguing such a violation to the jury.

Neither of the Plaintiff's specified alleged bases for Plaintiff's claims moving forward would qualify as violations of the SAA even if proven. First, a door check system is not required by the SAA. Second, there is no evidence on the record to support a problem with the braking system. In fact, the only basis for this claim in this case is Plaintiff's own self-serving statement that it was "something to do with the brakes" that caused the train to roll back and, in turn, caused him to place his thumb in the door jamb. Such a vague and baseless statement is inadmissible to begin with. Moreover, "something to do with the brakes" does not constitute a violation of the SAA either, as it does not fall within the requirements listed in the statute. Therefore, Plaintiff should be barred from offering such testimony at trial and making the argument that SAA was violated.

### B. There is No Evidence of an LIA Violation.

The LIA provides that "a locomotive ... and its parts and appurtenances" must be "in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701(1). Similar to the SAA, as discussed above, the LIA supplements the FELA "by imposing on interstate railroads an absolute and continuing duty to provide safe equipment." *Urie v. Thompson*, 337 U.S. 163, 188-89, 69 S. Ct. 1018, 93 L. Ed. 1282 (1949) (citation and internal quotation marks omitted). The LIA, however, more generally requires that a locomotive and all its parts and appurtenances be in proper condition, safe to operate, and adequately inspected and tested, rather than provided an enumerated list of safety appliances. 49 U.S.C. § 20701. Railroads cannot be held liable under the LIA for failure to install equipment unless the equipment constitutes a "part or appurtenance." As interpreted by the Supreme Court, "parts and appurtenances" are "[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the [FRA] are within the statute." *Southern Ry. Co. v. Lunsford*, 297 U.S. 398, 402, 80 L. Ed. 740, 56 S. Ct. 504 (1936).

In this case, there has been no evidence adduced during the course of discovery to support a violation of the LIA. Again, the sole "evidence" would be Plaintiff's statement regarding "something to do with the brakes" having caused the train to move. Plaintiff has no basis for this conclusion by his own admission, other than that he has heard that this can happen. He has no basis to determine whether a defect in the braking system or some user error would have caused the movement. Accordingly, such testimony would be predicated on pure conjecture. As discussed below, this testimony is both inadmissible and insufficient to support an LIA claim. Moreover, it would be insufficient evidence to support a finding of an LIA violation in this case.

11

## POINT II

## PLAINTIFF SHOULD BE PRECLUDED FROM ARGUING THAT THE TRAIN'S BRAKING SYSTEM WAS DEFECTIVE OR MALFUNCTIONED.

It is anticipated that plaintiff will argue at trial that a failure of the train's air brakes system in part caused his injury. However there is no factual basis for such an argument and, absent some evidentiary basis, Plaintiff should be precluded from making this argument, or suggesting that the brakes on the train malfunctioned. FELA provides a cause of action for any person injured while employed by a "common carrier by railroad" where the injury "result[ed] in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51. To recover under FELA, a plaintiff must prove (1) that he was injured (2) while employed by a railroad carrier engaged in interstate commerce, (3) and that the railroad's negligence (4) played a role in the injury. *Marchica v. Long Island R.R. Co.,* 31 F.3d 1197, 1202 (2d Cir. 1994).

There is no evidentiary basis in this case to establish a defective or malfunctioning air brake or air brakes system. Therefore, any argument or testimony that defective brakes were the cause of the accident in this case should be precluded.

Paust's sole witness with respect to liability will be himself. To the extent Mr. Paust intends to testify that the air brakes or air brake system were malfunctioning or defective, which caused the accident in this case, such testimony should be precluded. When asked about what caused the train to move, Plaintiff suggested that it had "something to do with the brakes" caused it to roll back suddenly after stopping. This testimony amounts to pure speculation. When pressed about

the basis of his knowledge of this brake issue, Plaintiff stated that he had never personally experienced such an event in the past. He testified that he merely had *heard* that other diesel trains had rolled back before. Pl. Dep., p. 33.

Moreover, testimony regarding the functionality of the brakes from Plaintiff himself would violate Federal Rule of Evidence 701, governing Opinion Testimony by Lay Witnesses.

Federal Rule of Evidence 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Rule 702, which governs the admissibility of expert testimony, provides,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case

Fed. R. Evid. 702.  See, e.g., *McCrary v. N.J. Transit Rail Operations, Inc.*, 2008 U.S. Dist. LEXIS 56719 (D.N.J. July 23, 2008) ("The effect, if any, using certain types of train cars has on a train's ride or braking system is a specialized, technical issue. Only a qualified expert can testify on this subject."). Plaintiff has offered no expert testimony with respect to the train's braking system (or any other technical issue with respect to trains). Plaintiff has failed to identify any other proposed expert witness on this issue. Therefore, Plaintiff should not be permitted to suggest to the jury a technical explanation for his accident, for which he has admitted to having no factual basis and is clearly not qualified to offer.

13

## POINT III

## PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF A SAFER ALTERNATIVE OR ARGUING THAT THE TRAIN SHOULD HAVE BEEN EQUIPPED WITH A DOOR CHECK SYSTEM.

Plaintiff appears to have abandoned the theory proffered in his interrogatory responses that LIRR should have equipped the locomotive with a door check system. However, to the extent that he intends to off any such evidence or argument to that effect, it should be precluded. Evidence to the effect that LIRR could (and should) have installed a door check or dampener system on the locomotive where the injury in this case occurred should be precluded as irrelevant to liability under Fed. R. Evid. 401. LIRR's duty is to use reasonable care to ensure that the workplace and appliances were reasonably safe for the purpose and circumstances in which they are used. Any inquiry as to whether they could have employed a safer method of maintaining the workplace is irrelevant. Under FELA, the LIRR is not obligated to provide a workplace free of all dangers (a burden that would be impossible to meet), but rather is only obligated to furnish a workplace that is reasonably safe. *Darrough v. CSX Transp., Inc.*, 321 F.3d 674, 676 (7th Cir. 2003).

<u>Absence of LIA Liability</u>

As an initial matter, the fact that LIRR did not install and maintain a door check or dampener system on the locomotive door in question cannot constitute an LIA violation and is not relevant to that question. "[T]he BIA [precursor to LIA] imposes upon rail carriers an absolute duty to maintain the parts and appurtenances of their locomotives in safe and proper condition." *Lilly v. Grand Trunk W.R.R. Co.*, 317 U.S. 481, 485, 87 L. Ed. 411, 63 S. Ct. 347 (1943). However, "'[p]arts and appurtenances' does not encompass every device that conceivably could be installed." *Id*. The LIA does not hold carriers liable for failure to install equipment on a locomotive

14

unless the "overlooked equipment (1) is required by applicable federal regulations or (2) constitutes an 'integral or essential part of a completed locomotive.'" *Id.* (citing *Southern Ry. Co. v. Lunsford*, 297 U.S. 398, 402, 80 L. Ed. 740, 56 S. Ct. 504 (1936))." *McGinn v. Burlington N. R.R.*, 102 F.3d 295 (7th Cir. 1996).

There is no applicable federal regulation that requires LIRR to install and maintain door checks or dampener systems in its locomotive cabs. Moreover, such measures are not considered an "integral or essential part of a completed locomotive". See, e.g., *Giebel v. Union Pacific R.R. Co.*, D. Minn. Case No. 08-CV-6294 (May 11, 2010) ("Giebel does not contend that a dampener is an 'integral or essential part' of a locomotive. If he did make such an argument, the Court would reject it."; See also, *King v. Southern Pac. Transp. Co.*, 855 F.2d 1485 (10th Cir. 1988) (holding that armrests are not an integral or essential part of locomotive, even though they were uniformly installed on the defendant's other locomotives and the defendant agreed to install them); *Mosco v. Baltimore & Ohio R.R.*, 817 F.2d 1088, 1091 (4th Cir. 1987) (holding that bars, grates or other protective window devices are not integral or essential devices); *Marshall v. Burlington N., Inc.*, 720 F.2d 1149 (9th Cir. 1983) (holding that strobe and oscillating lights are not integral or essential warning devices).

Absence of FELA Liability

Under FELA, the relevant standard is only whether the LIRR exercised reasonable care, not whether the procedures used by LIRR could have been made safer. Therefore, at trial, the proper question before the jury is "whether the railroad exercised reasonable care in creating a reasonably safe working environment, not whether that working environment could have been safer." *Darrough,* at 676. Courts have held that such evidence of alternative safer methods of work is improper and cannot be the basis to establish negligence by a railroad. A District Court recently

15

held that a FELA plaintiff could not prove his claim where the sole basis was that his employer should have provided alternative, safer tools. *Wright v. BNSF Ry. Co.*, 177 F. Supp. 3d 1310 (N.D. Okla. 2016). Wright was injured while he was "he used a five-foot bar to drive out a cross key on a hopper car". *Id.* at 1313. He argued that this was a two-man job and that he should have been provided with a "chisel bar" to complete the task. The court noted, "Critically, plaintiff makes no allegation that using the five-foot bar was unsafe, but only argues that there were easier, better methods of completing the task. This alone cannot establish negligence under FELA." *Id.* at 1313. The court went on to supply a litany of precedential support for its decision.

> See *Volner v. Union Pac. R.R. Co.*, 509 F. App'x 706, 708-09 (10th Cir. 2013) (unpublished) (granting railroad's motion for summary judgment on acute injury claim in part because plaintiff's argument as to the "difficulty performing his job [was] not enough to show the job was unsafe or that [the railroad] required him to perform the job in an unsafe manner."); *Soto v. S. Pac. Transp.*, 644 F.2d 1147, 1148 (5th Cir. 1981) ("That there are other, arguably more advanced, methods in use by the defendant for [accomplishing the task at hand] is of no significance where the method in use by [the plaintiff] was not an inherently unsafe one."); *Lewis v. CSX Transp., Inc.*, 778 F. Supp. 2d 821, 837 (S.D. Ohio 2011) (finding that plaintiff's "testimony is not evidence that his job was unreasonably unsafe or that [the railroad] required him to perform that job in an unreasonably unsafe manner."); *McKennon v. CSX Transp., Inc.*, 897 F. Supp. 1024, 1027 (M.D. Tenn. 1995), aff'd, 56 F.3d 64 (6th Cir. 1995) ("The fact that there may have been an automated, or safer method, of work does not automatically render the chosen method unsafe or negligent for purposes of FELA. Under FELA, the proper inquiry is whether the method prescribed by the employer was reasonably safe, not whether the employer could have employed a safer alternative method for performing the task." (internal citation omitted)).

*Wright v. BNSF Ry. Co.*, 177 F. Supp. 3d 1310, 1317 (N.D. Okla. 2016).

Here, there is no allegation that the door on the locomotive cab on train #2711 was not reasonably safe. In fact, the simple action undertaken by Plaintiff immediately prior to his injury is one which is completed safely by LIRR employees as a part of daily routine. Indeed, Plaintiff himself used the door safely on the day in question. By arguing that a door check or dampener should have been installed, Plaintiff would seek to find LIRR negligent for failing to provide *more*

16

than what is mandated by the statute. Moreover, such an argument would require an evidentiary foundation as to whether it would be (a) safer and (b) feasible, both of which are absent in the record of this case. Under FELA, the LIRR is not obligated to provide a workplace free of all dangers (a burden that would be impossible to meet), but rather is only obligated to furnish a workplace that is reasonable safe. See, *Darrough*, 321 F.3d at 676.

### POINT IV
### LIRR SHOULD BE PERMITTED TO INTRODUCE
### LIRR CORPORATE SAFETY RULES 200.1(4) and 2100.1238 INTO EVIDENCE

LIRR intends to offer into evidence copies of two of its Corporate Safety Rules, numbered 200.1(4) and 2100.1238. Plaintiff objects to the admission of either rule as "Irrelevant and immaterial." Joint Pretrial Order, p.7.

First, Safety Rule 200.1(4), entitled, "Working Safely", states in its entirety, "Report all safety concerns, including potentially hazardous conditions, to supervision." This rule is relevant to the extent Plaintiff intends to testify, as he did at his deposition, that he was aware of a potentially hazardous condition on the locomotive in question prior the accident in this case, but failed to report it to supervision or anyone else prior to his accident.

Second, LIRR Corporate Safety Rule 2100.1238 provides, in its entirety,

> When opening or closing windows or doors, employees must use every precaution necessary to avoid personal injury. Keep fingers and other body parts clear of door and window jambs, latches, window channels, door tracks, hinges and all other pinch points. If abnormal resistance or a defect is noted while using doors or windows, employees must not use force to operate. Defects must be reported to Maintenance of Equipment Central Control.

Mucc. Dec., Ex. D., LIRR Corporate Safety Rule 2100.1238. Defendant submits that this rule is relevant to rebut Plaintiff's claim that LIRR failed to provide a safe work place. The accident in

17

this case took place when Plaintiff admittedly, whether intentionally or not, placed his thumb in the door jamb as he was climbing down from the locomotive cab. His failure to heed this rule directly contributed to the occurrence of the accident in this case. LIRR's promulgation of its Safety contributes to the overall safety of the LIRR workplace. Moreover, the jury should be permitted to weigh and consider whether Plaintiff's failure to abide by the Safety Rules caused and/or contributed to his accident. Both of these rules are directly relevant to the claim in this case and are admissible as part of LIRR's defense.

### Conclusion

WHEREFORE, for all of the foregoing reasons, defendants respectfully request that this Court grant an order: (1) prohibiting plaintiff from arguing that LIRR can be found strictly liable for violations under the either the SAA or the LIA; (2) prohibiting plaintiff from introducing evidence or arguing that defendant was negligent or otherwise breached a duty by causing, permitting and allowing and using on its line a locomotive and train with an improper, inadequate, insufficient, unsafe, worn incompatible, and defective air brakes, air brakes system, components, computer, computer program, assemblies, parts, and appurtenances, for use for their designated purpose, such that the air brakes malfunctioned; (3) prohibiting plaintiff from introducing evidence or arguing that defendant was negligent or otherwise breached a duty by causing, permitting and allowing and using on its line a locomotive with a cab door that had no "door check, or door check system", (4) permitting Defendant LIRR to introduce LIRR Corporate Safety Rules 200.1(4) and 2100.1238 into evidence, and (5) granting such other and further relief as to this Court seems just

18

and proper.

Dated:    Jamaica, New York
           June 1, 2017

                                      MARK D. HOFFER, ESQ.
                                      Vice President/General Counsel & Secretary
                                      Attorney for Defendant

                                      By:  /s/_____
                                             Andrew Muccigrosso
                                             The Long Island Rail Road Company
                                             Law Department - 1143
                                             Jamaica Station
                                             Jamaica, New York 11435
                                             (718) 558-8444